UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CROSS and LESLY CROSS, Petitioners, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent. | No. 2:19-cv-00787-KJM-DB <br><br> ORDER |

Two related motions are before the court. First, respondent National Union Fire Insurance Company of Pittsburgh, PA ("National Union") moves to dismiss petitioners' petition to compel arbitration. Mot. to Dismiss, ECF No. 6-1. Relatedly, petitioners Timothy and Lesly Cross move to compel arbitration of the underlying coverage dispute involving National Union. Mot. to Compel, ECF No. 7-1. For the following reasons, National Union's motion to dismiss is GRANTED, petitioners' motion to compel is DENIED, and this matter is dismissed without leave to amend.

I.  BACKGROUND

  A.  Factual and Procedural History

This matter involves an insurance dispute emanating from a September 30, 2015 automobile accident involving petitioner Timothy Cross and a third party, Laurel Bane. Opp'n to

1

Mot. to Dismiss, ECF No. 16, at 2.[1] At the time of the collision, Mr. Cross was driving a vehicle owned by his employer Hilbers Construction. Because of this, the underinsured motorist policy National Union issued to Hilbers Construction applies to Mr. Cross's involvement in the collision. Opp'n to Mot. to Dismiss at 3 n.2. Petitioners ultimately settled with Ms. Bane's insurer, USAA, for the $50,000 policy limit; however, the events giving rise to petitioners' acceptance of the settlement offer inform the arbitration dispute here. *Id.* at 2–5; Mot. to Dismiss at 3.

Prior to settlement, petitioners engaged in protracted litigation in Sacramento County Superior Court against Bane, and consequently USAA as her insurer, for her alleged failure to timely tender policy limits. Opp'n to Mot. to Dismiss at 3; Mot. to Dismiss at 2; Not. of Removal, Ex. 6, ECF No. 1-3. Petitioners contend their commencement of the state court suit rendered the USAA policy "open," thus making USAA responsible for any jury verdict levied against Bane. Opp'n to Mot. to Dismiss at 3. On July 25, 2016, USAA, through counsel, offered to settle the matter for the $50,000 policy limit; petitioners refused the offer. *Id.*

On October 5, 2016, USAA made a second policy-limit offer to petitioners. *Id.* On October 10, 2016, with the second USAA offer outstanding, petitioners' counsel informed American International Group ("AIG") claims representative Marie Lynne Lezeau of the pending offer. *Id.* AIG Claims, Inc. is the claims administrator for respondent National Union, who insured the Hilbers Construction vehicle Mr. Cross drove during the accident. Mot. to Dismiss at 3; Not. of Removal, Ex. D, ECF No. 1-4, Murphy Decl. ¶ 7, Ex. 5. Over the course of their communications, petitioners' counsel asked Lezeau to "please provide . . . the limits on the UM/UIM[2] policy." Opp'n to Mot. to Dismiss at 3; Roussas Decl. ¶ 6, Ex. E, ECF No. 16-6, at E003. Lezeau responded: "This is a $1M policy." Opp'n to Mot. to Dismiss at 3; Roussas Decl.

---

[1] The court cites to petitioners' most recent opposition to respondent's motion to dismiss, ECF No. 16, which is the same as petitioners' prior opposition, refiled after further meet and confer efforts failed. *See id.* at 2 n.1.

[2] "UM" refers to an "uninsured motorist." "UIM" refers to an "underinsured motorist." *See* Murphy Decl. ¶ 7, Ex. 5.

2

¶ 6, Ex. E at E003. Additionally, petitioners' counsel inquired if "AIG [intended to] assert[] any type of exclusions," because petitioners wanted to "make sure that if Tim accepts the offer of policy limits that he is not stepping into a coverage mess." Opp'n to Mot. to Dismiss at 4; Roussas Decl. ¶ 6, Ex. E at E002–3. To that, Lezeau replied, "I don't believe that we are but I will discuss with our inhouse sounsel [sic]." Opp'n to Mot. to Dismiss at 4; Roussas Decl. ¶ 6, Ex. E at E002.

On November 17, 2016, in further communication with Lezeau, petitioners' counsel wrote:

> [W]e have a trial setting conference on December 5, and I would rather not dedicate the resources to this if there are no impediments to my settling with the defendant for policy limits and proceeding under the UIM coverage in the Hilbers' auto policy. Please do advise whether AIG is asserting any exclusive remedy/coverage defenses. From my understanding it will not.

Opp'n to Mot. to Dismiss at 4; Roussas Decl., Ex. E at E001. Then, on November 22, 2016, petitioners' counsel sent the following, repeating his request and understanding:

> Please advise if there are any coverage defenses that your company is asserting to an underinsured motorist claim by Tim. If we do not hear to the contrary from your company in the next 14 days we will accept Laurel Bane's offer of policy limits in consideration for a release as a settlement and proceed with the underinsured motorist claim under Hilber's [sic] automobile policy.

Opp'n to Mot. to Dismiss at 4; Roussas Decl., Ex. E at E001.

Petitioners contend this series of communications led them to accept Bane's $50,000 policy-limit settlement, believing they "could recover their losses against the '$1M policy' issued by National Union without having to first secure a jury verdict against Ms. Bane and then pursue a bad faith case against USAA for failing to timely tender its policy limits." Opp'n to Mot. to Dismiss at 5.

On December 10, 2018, petitioners tendered a demand letter to National Union under the "$1,000,000.00 Underinsured Motorist Limits applicable to AIG policy number 657-92-27 issued to Hilbers, Inc. for the benefit of its former employee Tim Cross . . . ." Murphy Decl. ¶ 5, Ex. 3. On January 21, 2019, National Union sent the following response:

3

> [N]o Underinsured motorist coverage is available to your client for this accident.
>
> . . .
>
> The tortfeasor had limits [sic] $50,000.00, which have been tendered. The tortfeasor limit is more than the $30,000 Underinsured Motorist limit for the Policy. Accordingly, the claim does not involve an "uninsured motor vehicle" as defined by the Policy. Thus, there is no uninsured/underinsured motorist coverage available for your client, and we must decline any request for benefits under Uninsured/Underinsured Motorist coverage.

Murphy Decl. ¶ 7, Ex. 5.

On March 6, 2019, in response to National Union's rejection letter, petitioners filed a petition to compel arbitration in Placer County Superior Court. Not. of Removal, ECF No. 1-1, Ex. A. On May 3, 2019, National Union timely removed the matter to this court.[3] Not. of Removal, ECF No. 1. On May 21, 2019, National Union moved to dismiss the underlying petition to compel arbitration arguing, *inter alia*, the dispute over uninsured motorist coverage is not arbitrable under the terms of the policy. Mot. to Dismiss at 4–7. Petitioners oppose the motion, Opp'n to Mot. to Dismiss, and National Union has replied, Resp't's Reply, ECF No. 18. On June 11, 2019, petitioners moved to compel arbitration, largely replicating the underlying petition filed in Placer County Superior Court. Mot. to Compel. National Union has opposed, Opp'n to Mot. to Compel, ECF No. 8, and petitioners have replied, Pet'rs' Reply, ECF No. 17. On August 23, 2019, the court heard oral argument on the motion. Counsel John Roussas appeared on behalf of petitioners and counsel Rebecca Weinreich appeared on behalf of respondent National Union.

B. The Policy

The National Union Business Auto policy, policy number 657-92-27, issued to Hilbers, Inc. for the applicable time period, provides in pertinent part:

---

[3] As explained in National Union's removal papers, petitioners' March 6, 2019 petition erroneously named AIG, Inc. as respondent. On April 30, 2019, petitioners dismissed AIG as erroneously named respondent, amended their petition to name National Union as respondent and effectuated service on National Union. Therefore, National Union's May 3, 2019 removal to this court was timely under 28 U.S.C. § 1446(b)(3). *See* Not. of Removal at 2–3.

4

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

. . .

D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorist Coverage shown in the Schedule of Declarations.

E. Changes In Conditions

. . .

5. The following Condition is added:

Arbitration

a. If we and an "insured" disagree whether the "insured is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", the disagreement will be settled by arbitration . . . However, disputes concerning coverage under this endorsement may not be arbitrated.

F. Additional Definitions

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but that sum is less than the Limit of Insurance for this coverage.

Mot. to Dismiss at 2 (citing Murphy Decl. ¶ 3, Ex. 1).

II. LEGAL STANDARD

    A. Motion to Dismiss

A party may move to dismiss a complaint against it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The rule applies equally to a petition to compel arbitration. *See Constr. & Gen. Laborers' Local 185 v. Seven-Up Bottling Co. of San*

*Francisco*, No. CIV. S-10-2358, 2010 WL 5136200, at *2 (E.D. Cal. Dec. 10, 2010) (considering motion to dismiss petition to compel arbitration under Rule 12(b)(6)). The court may grant the motion only if the movant can show the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Determining whether a complaint will survive a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in a light most favorable to a plaintiff and accept as true its factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

    B.  <u>Motion to Compel Arbitration</u>

    Congress enacted the Federal Arbitration Act ("FAA") in 1925, at that time "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA provides that "arbitration agreements generally shall be valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (internal quotation marks and citations omitted). Section 2 of the FAA, its "primary substantive provision," *Concepcion*, 563 U.S. at 339 (citation omitted), provides: "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

    Section 4 of the FAA allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. Generally, in deciding whether to compel arbitration, a court determines two "gateway" issues: (1) whether an agreement to arbitrate between the parties exists; and (2) whether their agreement covers the dispute brought before the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party moving to compel arbitration bears the burden of establishing each of these elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

6

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard" of Federal Rule of Civil Procedure 56. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks and citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration . . . ."); *Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration when opposing party had been afforded no opportunity to present evidence and argument). The party opposing arbitration receives the benefit of any reasonable doubts, and the court draws reasonable inferences in that party's favor; only when there are no genuine disputes of material fact calling into question the arbitration agreement's existence and applicability may the court compel arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)); *Concat*, 350 F. Supp. 2d at 804.

Nevertheless, the decision to compel arbitration is mandatory, not discretionary, if the requirements are met. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As noted, federal law strongly favors enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

III. DISCUSSION

Because the motions here essentially collapse into a single question regarding the arbitrability of petitioners' underinsured motorist ("UIM") claim with National Union, the court addresses them together and finds that the parties' dispute is not subject to arbitration.

A. Parties' Positions

National Union moves to dismiss the underlying petition to compel arbitration arguing that, under both California law and the National Union policy ("the policy") language itself, disputes related to policy coverage are beyond the scope of arbitrability. Mot. to Dismiss at 5–7. For support, National Union relies on *Furlough v. Transamerica Ins. Co.*, 203 Cal. App. 3d 40, 45 (1988), where, in interpreting the arbitration provision of the uninsured motorist statute,

California Insurance Code section 11580.2(f), the court explained that where a policy's arbitration provision tracks that of section 11580.2(f), "arbitration is limited to issues relating to liability of the uninsured motorist to the insured . . . it does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured." (citations omitted). Therefore, National Union contends, because the dispute pertains to benefits under the policy itself, and does not raise questions of recovery from the underinsured motorist, the dispute is barred from arbitration. Mot. to Dismiss at 6.

Moreover, National Union argues petitioners cannot recover on their claims under California Insurance Code section 11580.2(p),[4] because petitioners are neither "underinsured" under the statute nor the policy itself, thus the dispute is barred from arbitration. *Id.* at 7–9. Finally, National Union contends petitioners' "detrimental reliance" argument lacks merit because they fail to plead it in the underlying petition and the statements of an insurance adjuster, upon which petitioners heavily rely, are not binding determinations of policy coverage. *Id.* at 9–13.

Petitioners counter that National Union's 12(b)(6) motion can only be granted if, as a matter of law, petitioners could not reasonably rely on the "explicit representation by National Union's claims adjuster regarding the policy limits," and whether or not petitioners are "underinsured" under the policy is a question of fact not amenable to resolution by way of a 12(b)(6) motion. Opp'n to Mot. to Dismiss at 5–9. Petitioners tacitly concede the dispute is confined to "benefits owed for injuries and damages resulting from a motor vehicle collision," because the issue rests solely on the factual determination of whether estoppel or waiver applies. *Id.* at 8. In other words, petitioners contend the question of "[w]hether or not the coverage dispute is arbitrable is irrelevant here." Supp. to Not. of Removal, ECF No. 5-1, Ex. A at 3 (petitioners' reply to National Union's opposition to state court petition).

---

[4] In pertinent part, California Insurance Code section 11580.2(p) provides: "This subdivision applies only when bodily injury . . . is caused by an underinsured motor vehicle. . . . (2) 'Underinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person."

8

B. <u>Evidence Beyond Four Corners of Petition</u>

As a threshold matter, and to the extent there is any dispute regarding the court's ability to rely on evidence beyond the face of the petition to compel arbitration, the summary judgment-type standard when applied to a petition to compel arbitration permits reliance on such evidence. Ordinarily, a 12(b)(6) motion confines the court to the four corners of the complaint, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). However, where, as here, the petition seeks to compel arbitration, the court will apply a summary judgment-type standard and thus may look to extrinsic evidence beyond the petition to resolve the dispute. *See Concat*, 350 F. Supp. 2d at 804 (explaining that when evaluating the arbitrability of dispute, court must rely on contract containing arbitration agreement). Moreover, even under the more stringent 12(b)(6) standard, the court may still, at the very least, rely on the National Union policy documents because the petition itself refers to the policy and its relevant provisions, and the authenticity of the policy is not in dispute. *See Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1065 (N.D. Cal. 2018) (relying on insurance policies not physically attached to complaint because policies alleged in complaint and authenticity was undisputed). For all of these reasons, in resolving the present motions, the court relies on National Union policy documents, policy number 657-92-27, Murphy Decl. ¶ 3, Ex. 1, and correspondence between petitioners and National Union supporting petitioners' detrimental reliance claim, Roussas Decl. ¶¶ 6–7, Exs. E & F.

C. <u>Analysis</u>

The parties' arguments make clear their dispute is purely contractual, as they take diametrically opposing views of whether the National Union policy covers petitioners' purported injury beyond the $50,000 USAA policy limit. Petitioners contend National Union has "tacitly admit[ted] the existence of [a] controversy" regarding the amount of damages in that National Union makes the following argument: "'the parties must first litigate coverage and only if this Court finds there is coverage could the parties then potentially arbitrate the underlying car accident case. It would waste everyone's time and resources to first arbitrate the car accident

damages and then litigate whether there is coverage for any car accident damages.'" Pet'rs' Reply at 1–2 (quoting Opp'n to Mot. to Compel at 1–2). National Union opposes this characterization of its position and contends, on the other hand, "it is a simple issue as to whether National Union must be forced to arbitrate[,]" and a basic review of the policy reveals that no coverage is available to petitioners; therefore, it says, no factual determination is necessary because "California law is well-settled that interpretation of an insurance policy is [a] matter of law, and not an issue for a jury." Resp't's Reply at 7 (citing *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 378 (2005)).

    National Union is correct. Petitioners attempt to muddle the issue by arguing National Union's insurance adjuster, Ms. Lezeau, misled them by representing that the National Union UIM policy limit was higher than it actually was; because petitioners relied on that representation, the question of damages remains; and, under the policy, any question of damages is subject to arbitration. Opp'n to Mot. to Dismiss at 5–9. But these arguments, reduced to their essence, confirm the dispute pertains to whether the National Union policy covers purported damages beyond the $50,000 USAA policy limit, not whether "the 'insured' is legally entitled to recover damages from the owner or driver of [the] 'uninsured motor vehicle' or [whether] . . . the amount of damages [] are [sic] recoverable by that 'insured' . . . ." Murphy Decl. ¶ 3, Ex. 1. In other words, the dispute does not involve the extent of any damages, but whether the National Union policy covers damages above the $50,000 USAA settlement amount.

    The terms of the policy clearly prohibit arbitrability of this question: "disputes concerning coverage under this endorsement may not be arbitrated." *Id.* Petitioners concede as much: "Tim and Lesly Cross do not seek to compel arbitration of National Union's coverage defense, since California Insurance Code Section 11580.2(f), which governs arbitration in underinsured motorist cases 'does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured.'" Opp'n to Mot. to Dismiss at 8 (quoting *Furlough*, 203 Cal. App. 3d at 45–46). Instead, as detailed below, petitioners attempt to morph the issue to be arbitrated into one of an assessment of damages in order to pull the dispute squarely within the policy's arbitrability terms. They perform this

maneuver by focusing their argument on their potential estoppel and waiver claims. But the potential applicability of waiver and estoppel, even if they can be established, do not alter the question before the court: is the parties' dispute fundamentally one relating to a damages assessment or policy coverage? If the dispute involves policy coverage, the dispute simply is not subject to arbitration given the plain terms of the policy.

Relevant caselaw confirms it is accurate to characterize the dispute here as concerning policy coverage. In *Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725, 734 (2016), although addressing the applicability of an excess liability policy, the court explained the general nature of UIM coverage: "UIM coverage allows an insured to recover from his or her own insurer the difference between the amount of the insured's own underinsured motorist policy limits and whatever is available from the negligent driver's liability insurance. [Citations.]" (alteration in original) (citing *Daun v. USAA Cas. Ins. Co.*, 125 Cal. App. 4th 599, 606 (2005)). And in *Furlough*, cited above, the court explained that "where . . . the policy essentially restates the statutory language [of California Insurance Code section 11580.2(f)],[5] arbitration is limited to issues relating to liability of the uninsured motorist to the insured; it does not extend to determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured." 203 Cal. App. 3d at 45 (citation omitted). Finally, in *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299, 1301 (9th Cir. 1985), a case involving a similarly worded arbitration clause subject to interpretation under Hawaii state law, the court affirmed dismissal of the action on summary judgment because "State Farm based its refusal to compensate [the insured] on the ground that the policy does not cover [the insured's] injury." Because the court was "presented with a simple question of contract interpretation," it found the coverage issue was not arbitrable under the terms of the policy. *Id.* These cases reflect a consensus among courts addressing the question presented here. Taken together, they articulate

---

[5] The arbitration clause here, as in *Furlough*, largely tracks the language of California Insurance Code section 11580.2(f), which provides, in relevant part: "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration."

11

the principle that guides the court: where insureds claim as a matter of right they are entitled to UIM coverage, that claim is made on the policy itself; if the policy prohibits arbitrability of such a claim, then the court must deny any request to compel arbitration of the claim.

Petitioners' estoppel and waiver arguments do not change the calculus. Following the August 23, 2019 motion hearing, the court permitted petitioners' counsel leave to file supplemental authority supporting his contention that email representations by a claims adjuster may supplant the express terms of a policy if an insured, through counsel, relied on those representations. This reliance, counsel argues, provides support for petitioners' estoppel and/or waiver claims. The supplemental authority provided by counsel, ECF No. 21, does not persuade the court. Rather, the authority petitioners point to undermines their position, in that it stands for the proposition that alleged misrepresentations or bad-faith conduct by an insurer or an insurer's representative are relevant to an insured's right to collect on the policy, even if the mechanism for relief, i.e., a bad-faith or estoppel action, is separate and distinct from the policy itself. *See, e.g.*, *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979) ("[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." (alteration in original; citation omitted)); *Safeco Ins. Co. of Am. v. Parks*, 170 Cal. App. 4th 992, 998 (2009) (litigating bad faith action for breach of policy after binding arbitration on damages). Even if there are questions of fact regarding an alleged misrepresentation, those questions are separate from the court's analysis of the arbitrability of the dispute.

To further illustrate the point, if petitioners were induced into believing the National Union UIM policy limit was $1 million, and they detrimentally relied on that representation, their claim for fulfilment of the purported $1 million policy limit would be under the policy itself; there would be no threshold determination whether "the 'insured' is legally entitled to recover damages from the owner or driver of [the] 'uninsured motor vehicle' or . . . [whether the] amount of damages [] are [sic] recoverable by that 'insured . . . .'" Murphy Decl. ¶ 3, Ex. 1. This demonstrates why National Union's purported concession on damages, *see* Pet'rs' Reply at 1–2, is no concession at all; rather, it is a contention that regardless of what may have

compelled petitioners to agree to the $50,000 USAA settlement, a demand for payment beyond that amount under the UIM terms is a demand on the policy itself.

Finally, the court's limited role in interpreting arbitration agreements under the FAA reinforces its conclusions. The court need only determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, petitioners do not dispute the validity of the arbitration agreement in the National Union policy. The court therefore must only determine whether the arbitration agreement was meant to encompass disputes regarding UIM policy coverage, and whether representations by a claims adjuster may influence an insured's right to coverage under the policy. Because both inquiries sound in policy coverage, a subject expressly precluded from arbitration under the policy, the court answers these questions in the negative.

National Union's motion to dismiss is GRANTED and petitioners' motion to compel is DENIED. Given that the dismissal is based fundamentally on the court's reading of the immutable policy language, the motion is granted without leave to amend because any opportunity to amend would be futile. Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). At hearing the parties confirmed as much, that the court's resolution of the pending motions would resolve the case.

IV. <u>CONCLUSION</u>

Respondent National Union's motion to dismiss, ECF No. 6, is GRANTED and petitioners' motion to compel arbitration, ECF No. 7, is DENIED. The Clerk of Court is directed to enter judgment for respondent and close the case.

IT IS SO ORDERED.

DATED: December 2, 2019.

UNITED STATES DISTRICT JUDGE